**ERIC S. FISH**
California State Bar No. 280992
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Eric_Fish@fd.org

Attorneys for Defendant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO.: 20-cr-0115-LAB |
|---|---|
| Plaintiff, | Date: February 3, 2020<br>Time: 2:00 pm |
| v. | |
| JOSE IGNACIO MENDOZA-RODRIGUEZ, | **MOTION TO COMPEL DISCOVERY; MOTION TO PRESEVE EVIDENCE; MOTION FOR LEAVE TO FILE FURTHER MOTIONS; MEMORANDUM IN SUPPORT** |
| Defendant. | |

**I.**

**STATEMENT OF FACTS**

The Government filed an information charging Mr. Mendoza-Rodriguez with a violation of 8 U.S.C. § 1326. He has entered a plea of not guilty. These motions follow.

**II.**

**MOTION TO COMPEL DISCOVERY**

Defendant requests the preservation and production of all relevant materials under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, and the *Jencks* Act.

This request includes all material information in the government's

possession. Rule 16 "grants criminal defendants a broad right to discovery.*" United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010). Evidence is material under Rule 16 if it has any tendency to prove or disprove a consequential fact in the case. See *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013) (holding that even evidence only relevant to discrediting an implausible defense must be produced under Rule 16). Rule 16's "low threshold" of materiality only asks whether information would help to prepare the defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). The government must produce any material information in its possession, custody, or control, and "lack of knowledge [about the evidence's existence] or even a showing of due diligence won't excuse non-compliance." *See id*. Consequently, the government should make every effort to locate and produce relevant discovery, erring on the side of disclosure.

Moreover, due process requires the government to produce all favorable evidence to the accused relevant to the issues of guilt and punishment. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). And whether one agrees that there's "an epidemic of *Brady* violations abroad in the land," *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (order) (Kozinski, C.J., dissenting from denial of reh'g en banc), both the Court and the government should resolve doubts about Brady discoverability in favor of disclosure. See *United States v. Agurs*, 427 U.S. 97, 108 (1976) (noting that "the prudent prosecutor" will resolve doubts about *Brady* discoverability in favor of disclosure). The government has an affirmative obligation to fully produce *Brady* materials regardless of whether they have been requested by the defense. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (interpreting *United States v. Bagley*, 473 U.S. 667 (1985)). Specifically, it must turn over "all evidence relating to guilt or punishment which might reasonably be considered favorable to the defendant's case, even if the evidence is not admissible so long as it is reasonably likely to lead to admissible evidence." *United States v. Price*, 566 F.3d 900, 913 n.14 (9th Cir. 2009) (citing favorably the pretrial *Brady* discovery

standard employed by several district courts "[f]or the benefit of trial prosecutors") (quotations and citations omitted).

The government has often argued that it need only produce favorable evidence to the defense if, in the government's estimation, it meets the appellate standard of materiality, i.e., "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." See, *e.g., Bagley*, 473 U.S. at 682. But "[t]his analysis obviously cannot be applied by a trial court facing a pretrial discovery request," much less by the prosecution, because "[w]hether disclosure would have influenced the outcome of a trial can only be determined after the trial is completed and the total effect of all the inculpatory evidence can be weighed against the presumed effect of the undisclosed Brady material." United States v. *Sudikoff*, 36 F.Supp.2d 1196, 1198-99 (C.D. Cal. 1999). Hence, the Ninth Circuit's endorsement of the disclosure standard quoted above in *Price*, one that emphasizes resolving doubts about discoverability in favor of disclosure. See also *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013) (acknowledging the difference between pretrial and appellate standards when affirming that favorable evidence should have been turned over before trial but then applying the materiality analysis to determine whether such an error requires reversal); *Cf. Carriger v. Stewart*, 132 F.3d 463, 481 (1997) (en banc) ("We have held that the government cannot satisfy its Brady obligation to disclose exculpatory information by making some evidence available and claiming the rest would be cumulative.").

Ultimately, producing all relevant materials serves the aligned interests of the government, the justice system, and defendants. Defense counsel are servants of justice in our adversarial system; their advocacy aids in the accuracy of trial results; and they cannot perform this role effectively without the ability to marshal the evidence that supports their clients. *Compare Herring v. New York*, 422 U.S. 853, 862 (1975), with *McNeil v. Wisconsin*, 501 U.S. 171, 183 (1991) (Stevens, J.,

3

dissenting). Indeed, when the government discloses all relevant evidence, it may convince the defense that accepting a government plea offer is the only reasonable option; thus erring on the side of disclosure can preserve both prosecutorial and judicial resources. Furthermore, the government must affirmatively aid the defense under *Brady* precisely because the duty to see justice done with proper methods transcends the government's adversarial role. *See Bagley*, 473 U.S. at 675 n.6 (citing *Berger v. United States*, 295 U.S. 78, 88 (1935) (explaining that the government has a duty to see justice done with proper methods, not a duty to win)). While failure to disclose relevant information increases the risk that the government will obtain victory without justice, disclosing relevant information will always serve the government's transcendent duty to value justice over victory.

"Only judges can put a stop to [*Brady* violations.]" Olsen, 737 F.3d at 626 (order) (Kozinski, C.J., dissenting from denial of reh'g en banc). Accordingly, the Court should order the government to create and share a discovery log documenting every piece of evidence considered for production and describing, when applicable, why any given piece of evidence was withheld. Failure to at least disclose the existence of plausibly discoverable evidence usurps the judicial role of resolving discovery disputes just as surely as destroying the evidence would have. *Cf. Harris, supra*. In both cases a unilateral prosecutorial act renders judicial review functionally impossible, whether by failing to preserve evidence or by failing to inform opposing counsel of its existence.

Additionally, Defendant makes the following specific production requests and clarifications of the government's *Brady* obligation:

(1) <u>Defendant's Statements</u>. *Brady* compels production of all of Defendant's statements made in the presence of potential government witnesses as both impeachment evidence and information likely to lead to impeachment evidence. See *Giglio*, 405 U.S. 150, 153-54 (1972) (emphasizing the importance under *Brady* of disclosing evidence affecting the credibility of witnesses). The

government must disclose all copies of any written or recorded statements made by Defendant; the substance of any statements Defendant made, whether documented or not, that the government intends to offer in evidence at trial; any response by Defendant to interrogation; any written summaries of Defendant's oral statements contained in the handwritten notes of the government agent; any response to any *Miranda* warnings that may have been given to him; and any other statements Defendant made. Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* of Defendant's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

(2) <u>Reports and Notes</u>. *Brady* compels production of all arrest reports, investigatory reports, notes, and rough notes related to the case as impeachment and exculpatory evidence as well as information likely to lead to impeachment and exculpatory evidence.

(3) <u>Dispatch Tapes.</u> Defendant requests preservation and production of all relevant dispatch tapes, including but not limited to all related dispatch tapes from the date of Defendant's arrest.

(4) <u>Understandings, Conversations, and Communications with Potential Witnesses.</u> *Brady* compels production, as impeachment evidence and information likely to lead to impeachment evidence, of all explicit or implicit promises, considerations, or understandings given to or entered into with witnesses in exchange for their testimony, as well as all conversations, negotiations or other communications that either eventually led to such an understanding or else might have been construed as leading towards such an understanding. Defendant also specifically requests this information under Rule 16.

(5) <u>Prior Records of Defendant and of Government Witnesses</u>. *Brady* compels production of the government witnesses' prior criminal and prison records as both impeachment evidence and information likely to lead to other impeachment

evidence. This request includes prison records because *Brady's* requirement of turning over "all material information casting a shadow on a government witness's credibility" cannot be satisfied without producing this evidence. *Carriger,* 132 F.3d at 479 (interpreting *Giglio v. United States*, 405 U.S. at 481-82 (emphasis in original) (quoting *United States v. Bernal-Obeso*, 989 F.2d at 335)). Defendant also requests a copy of their own prior criminal record. Fed. R. Crim. P. 16(a)(1)(D).

(6) <u>Prior Acts Disclosures</u>. Defendant requests notice at least three weeks before trial of the general nature of any crimes, wrongs, or other acts that the government intends to introduce at trial. Fed. R. Evid. 404(b)(2). This includes evidence the government intends to introduce as impeachment or rebuttal. United States v. Vega, 188 F.3d 1150, 1154-55 (9th Cir. 1999). Sufficient notice requires the government to "articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).

(7) <u>Material Documents and Objects</u>. Defendant requests the opportunity to inspect and to copy or photograph all relevant documents and objects that are within the government's possession, custody or control, including all relevant books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items. Fed. R. Crim. P. 16(a)(1)(E). This includes all exculpatory and inculpatory evidence. See *Hernandez-Meza*, 720 F.3d at 768 ("Information is material even if it simply causes a defendant to 'completely' abandon' a planned defense and 'take and entirely different path.'").

This request also includes access to any evidence that was obtained from or belongs to Defendant, including cell phones, other electronics, and their data, regardless of whether they were seized without a warrant or searched by the government. Fed. R. Crim. P. 16(a)(1)(E)(iii).

(8) <u>Henthorn Review</u>. The Court should order the prosecutor to oversee, if not personally conduct, a review of the personnel files of each government employee involved in this case to search for materials discoverable under *Brady*. "[T]he individual prosecutor has a duty to learn of any [Brady] evidence known to the others acting on the government's behalf in the case[.]" *Kyles*, 514 U.S. at 437; *United States v. Henthorn*, 931 F.2d 29, 30-1 (9th Cir. 1991) (Defendant's request for this review triggers the prosecutor's obligation to conduct it). In addition, the defense specifically requests information pertaining to whether any of the government's witnesses, or any other agents involved in the case at any phase are, or ever have been, members of the "I'm 10-15" group on Facebook, or of any other online forum where racist material is posted. *See generally* A.C. Thompson, *ProPublica*, Inside the Secret Border Patrol Facebook Group Where Agents Joke About Migrant Deaths and Post Sexist Memes, July 1, 2019.

(9) <u>Evidence of Criminal Investigation of Any Government Witness</u>. *Brady* compels production, as impeachment evidence or information likely to lead to impeachment evidence, of any information showing that a prospective government witness is, has been, or may be under criminal investigation by any federal, state, or local authorities. *See Carriger*, supra (discussing the inherent untrustworthiness of criminal witnesses). Defendant also makes this request under Rule 16.

(10) <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>. *Brady* and Rule 16 compel production of any materials tending to show that a prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired, as well as any evidence that a witness has ever used narcotics or other controlled substance, or abused alcohol.

(11) <u>Preservation of Materials Related to the Case</u>. Defendant seeks an order preserving all materials related to this case so that the Court can resolve any disputes about discoverability, including all materials that reasonably might be

discoverable under Rule 16, *Brady,* and the *Jencks* Act. This request includes but is not limited to the preservation of all materials either specifically requested for production or that have been described by Defendant as falling within the government's *Brady* disclosure obligation.

Defendant further requests that the prosecutor be ordered to question all agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

(12) <u>Expert Witnesses</u>. The government must provide a written summary of expert testimony that it intends to use at trial, and this summary must include the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications. Fed. R. Crim. P. 16(a)(1)(G). The Defense requests this summary at least three weeks before trial in order to properly respond, if necessary, by obtaining its own expert and challenging the opinions and credentials of the government's expert during a hearing in advance of trial. See *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (declaring the trial judge the "gatekeeper" who shall determine the reliability and relevancy of expert testimony by way of "special briefing or other proceedings" as necessary).

(13) <u>Reports of Scientific Tests or Examinations</u>. Defendant requests the results of any scientific or other tests or examinations conducted by or on behalf of the government in connection with this case. See Fed. R. Crim. P. 16(a)(1)(F).

(14) <u>Jencks Act Material.</u> Defendant requests that the government produce all of the statements of any prospective witness relating to the expected direct testimony of the witnesses, including any kind of recording contemporaneous to the witness's pertinent past statements. *See* 18 U.S.C.A. § 3500. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963); see also

*United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); see also *United States v. Riley*, 189 F.3d 802, 806-08 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Defendant to investigate the *Jencks* material. Defendant requests pretrial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

(15)   <u>TECS Records</u>. Defendant specifically requests under Rule 16 that the government produce a copy of any TECS records relating to Defendant. Any prior border crossings are considered "other acts" evidence which the government must produce before trial. *Vega*, 188 F.3d at 1154.

(16)   <u>Video Footage of the Defendant or the Defendant's Vehicle</u>. Defendant specifically requests under Rule 16 that the government produce a copy of any video footage it has taken of Defendant or their vehicle.

(17)   <u>A-file Documents</u>. *Brady* and Rule 16 compel production of Defendant's entire A-file. The sheer and increasing number of A-file documents has, since the 1980s, outpaced the government's ability to adequately manage the storage, transportation, and recovery of these documents. *See* United States Department of Justice, *A-file Policy and Practice*, Introduction, (Aug. 7, 2014, 11:03 AM), http://www.justice.gov/oig/special/0007/afile.htm. These documents memorialize proceedings and events alleged to satisfy an element of the charged offense and it is reasonably likely that, taken altogether, these documents have been stored and recovered so inaccurately and so incompletely as to tend to disprove that allegation.

(18)   <u>Recordings of Deportation Proceedings</u>. The Defense specifically requests all audio, visual, or other recordings of the Defendant's prior deportation proceedings, as these are relevant to the charge of being a deported alien.

(19) The Defense requests any information concerning whether the United States military was involved in the defendant's apprehension. This includes any information about military scope operators, military ground sensors, and any other military resources (from any branch of the armed forces) that may have been involved in the defendant's apprehension and arrest.

(20) <u>Residual Request</u>. Defendant intends by this discovery motion to invoke discovery to the fullest extent possible under the Federal Rules of Criminal Procedure, the Constitution, and laws of the United States.

## III.

## MOTION FOR PRESERVATION OF EVIDENCE

The defendant specifically requests the preservation of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case. In particular, the defense emphasizes that this request includes (though is not limited to) that any video or audio recordings made of the circumstances of the defendant's arrest, interrogation, and other relevant events in the case be preserved. Defendant also requests the Court order the Government to make all physical evidence available for inspection

## IV.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defendant and defense counsel are still reviewing discovery and conducting investigation, and need time to investigate the case further and research potential factual and legal issues before presenting Defendant's further motions to the Court. The defense may find it necessary to file additional motions, or to supplement existing motions with additional facts.

## V.

## CONCLUSION

The Court should order production of discovery and the preservation of

evidence. Additionally, the Court should grant the defense leave to file further motions.

Respectfully submitted,

Dated: January 14, 2020

*s/ Eric Fish*
Federal Defenders of San Diego, Inc.
Email: Eric_Fish@fd.org

**CERTIFICATE OF SERVICE**

 Counsel for the Defendant certifies that the foregoing pleading has been electronically served on the parties by virtue of their registration with the CM/ECF system.

                Respectfully submitted,

Dated: January 14, 2020    *s/ Eric Fish*
                Federal Defenders of San Diego, Inc.
                Email: Eric_Fish@fd.org